IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REBECCA A.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00248 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Rebecca A. ("Rebecca") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Rebecca alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) identify her transferable skills from her previous relevant work, resulting in a conflict with the Dictionary of Occupation Titles ("DOT"); and (2) assess her mental impairments.

I agree that the ALJ's decision is not supported by substantial evidence, as the ALJ failed to properly identify Rebecca's transferable skills. Accordingly, I **RECOMMEND GRANTING in part** Rebecca's Motion for Summary Judgment (Dkt. No. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14), and **REMANDING** this matter for further administrative consideration.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rebecca failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion") (citation omitted).

## CLAIM HISTORY

Rebecca filed for DIB in July 2017, initially claiming her disability began on April 1, 2012, due to essential hypertension, low back pain, depression, mixed hyperlipidemia, dysthymia, sleep apnea, bulging disk in neck, sciatica, and arthritis in back and legs. R. 251, 255. Rebecca subsequently amended her alleged onset date to October 23, 2016. R. 15. Rebecca's date last insured was June 30, 2017; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB.[3] R. 15, 251; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Rebecca's application at the initial and reconsideration levels of administrative review. R. 112–22, 124–36. On November 19, 2018, ALJ David Lewandowski held a hearing to consider Rebecca's claim for DIB. R. 38–66. Counsel represented Rebecca at the hearing, which included testimony from vocational expert Asheley Wells. On April 9, 2019, the ALJ entered his decision analyzing Rebecca's claims under the familiar five-step process[4] and denying her claim for benefits. R. 15–32.

---

[3] Rebecca was 55 years old on her date last insured, and 57 on the date of the hearing, making her a person of advanced age under the Act. R. 112.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Rebecca was insured at the time of the alleged disability onset and that she suffered from the severe impairments of lumbar degenerative disc disease and obesity.[5] R. 17. The ALJ found that Rebecca's impairments of generalized anxiety disorder and depressive disorder were non-severe because they caused no more than mild limitation in any of the four broad areas of mental functioning. R. 18. Specifically, the ALJ found no limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and mild limitation in concentrating, persisting, or maintaining pace. R. 18–20. The ALJ determined that Rebecca's impairments, either individually or in combination, did not meet or medically equal a listed impairment.[6] R. 21.

The ALJ concluded that Rebecca retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 21–22. Specifically, Rebecca can only occasionally perform postural activities and should avoid concentrated exposure to extreme cold temperatures, vibrations, and industrial hazards. Id. The ALJ determined that Rebecca was unable to perform her past relevant work as a certified nursing assistant ("CNA") and a creeler. R. 30. However, the ALJ determined that she had acquired work skills from her past relevant work as a CNA that were transferable to one other occupation with jobs existing in significant numbers in the national economy, a Companion.[7] Thus, the ALJ determined that Rebecca was not disabled.

---

[5] The ALJ wrote that temporary medical problems noted in the record, including infection, dysuria, cystitis with hematuria, abnormal vaginal bleeding, and shoulder pain were non-severe. R. 17. Likewise, other medical conditions in the record such as hypertension, hyperlipidemia, gastroesophageal reflux disease, and sleep apnea did not affect her ability to work and were also non-severe. R. 17–18. Finally, the ALJ wrote that Rebecca's right arm pain and weakness from carpal tunnel syndrome or tendinitis, her cervical degenerative disc disease, and cognitive difficulties were non-severe prior to the date last insured. R. 18.

[6] The ALJ considered listing 1.04 (disorders of the spine). R. 21.

[7] As Rebecca points out in her brief, the ALJ's decision wrongly characterizes the Companion position as just one example of multiple representative occupations that Rebecca could perform. R. 31. In fact, the VE testified there was "one position to which the CNA skills would transfer." R. 48. As an individual of advanced age with a severe impairment limiting her to light work, under the Act, Rebecca would not be found able to make an

4

R. 31–32. Rebecca appealed the ALJ's decision and the Appeals Council denied her request for review on February 26, 2020. R. 1–3.

## ANALYSIS

Rebecca argues that the ALJ failed to properly identify her transferable skills, as acquired from her previous position as a Certified Nursing Assistant ("CNA"), and explain how those skills would transfer to work as a Companion.[8] Thus, Rebecca argues, both the ALJ's findings and the vocational expert's testimony were inconsistent with the DOT. The Commissioner counters that substantial evidence supports the ALJ's finding that Rebecca acquired skills as a CNA that would transfer to work as a Companion. However, the ALJ provides no explanation as to what skills, specifically, Rebecca actually possessed as a CNA that would transfer to the Companion position. Further, the transferable skills listed by the vocational expert are not contained in the Dictionary of Occupational Titles and this conflict was not adequately explained by either the vocational expert or the ALJ.

The Regulations define a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties." Titles II & Xvi: Work Skills & Their Transferability As Intended by the Expanded Vocational Factors Regulations Effective Feb. 26, 1979, SSR 82-41 (S.S.A. 1982).[9] Skills are "practical and familiar

---

adjustment to other work, unless she had skills that can transfer to other skilled or semiskilled work that she can do despite her impairments. See 20 C.F.R. § 404.1568(d)(4).

[8] Rebecca has a history of anxiety, depression, and back pain and other physical impairments, as both detailed by the ALJ and in the plaintiff's brief. I do not provide an overview of her treatment here as it is not relevant to the issue of transferable skills.

[9] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

5

Pageid#: 823

knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." Id. Listed examples include activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. Significantly, skills cannot be gained by doing unskilled jobs. The Regulations indicate that a skill is transferable when the "skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." See 20 C.F.R. § 404.1568.

Based on the testimony of the vocational expert, the ALJ found that Rebecca's past relevant work as a CNA (DOT # 355.674-014), was medium work, "but performed at the heavy exertional level" and was "semi-skilled with a specific vocational preparation ("SVP") of 4." R. 30. The vocational expert noted that a CNA required skills of "general medical care, taking vital signs, keeping the time scheduled to dispense medications, and household management." Id.[10] However, missing from the hearing and the ALJ's opinion was a careful discussion of the work activities, including skills, that Rebecca actually performed as a CNA. In fact, the discussion of Rebecca's CNA work history established only that she was "picking up people" and performed the work at a heavy level of exertion. R. 45, 48.

---

[10] The DOT describes this position (# 355.674-014 Nurse Assistant) as follows:

Performs any combination of following duties in care of patients in hospital, nursing home, or other medical facility, under direction of nursing and medical staff: Answers signal lights, bells, or intercom system to determine patients' needs. Bathes, dresses, and undresses patients. Serves and collects food trays and feeds patients requiring help. Transports patients, using wheelchair or wheeled cart, or assists patients to walk. Drapes patients for examinations and treatments, and remains with patients, performing such duties as holding instruments and adjusting lights. Turns and repositions bedfast patients, alone or with assistance, to prevent bedsores. Changes bed linens, runs errands, directs visitors, and answers telephone. Takes and records temperature, blood pressure, pulse and respiration rates, and food and fluid intake and output, as directed. Cleans, sterilizes, stores, prepares, and issues dressing packs, treatment trays, and other supplies. Dusts and cleans patients' rooms. May be assigned to specific area of hospital, nursing home, or medical facility. May assist nursing staff in care of geriatric patients and be designated Geriatric Nurse Assistant (medical ser.). May assist in providing medical treatment and personal care to patients in private home settings and be designated Home Health Aide (medical ser.).

The vocational expert testified there was "one position" that Rebecca's CNA skills would transfer to, a Companion.[11] R. 48. The vocational expert stated:

> A Companion position is very similar to a CNA position, without the responsibilities of lifting, bathing, and generally helping the person lifting their own weight. It's basically a position [with] maybe light housework, helping medication schedules, groceries, appointments, things like that.

R. 49. The vocational expert further indicated that the Companion position was a "very low skill level" of SVP 3 and identified the transferable skills from CNA to Companion as:

> [B]asically the knowledge and the familiarity with the environment, such as, like I said, light housekeeping, medications, keeping schedules, helping transport patients to appointments, sometimes vital signs, blood pressure, heartbeat, things like that.

R. 49, 61. Eventually, after questioning by the ALJ, the vocational expert described the transferable skill as "overarching household management." R. 65. However, the term "household management" is not contained in the DOT. In fact, the vocational expert's explanation of the skills transferable to the Companion position simply adds to the confusion:

> ALJ: And once again, what are the skills that are transferable?
>
> VE: Okay, so there would be the familiarity with general medical care knowledge, including vital signs – which sometimes includes pulse – but blood pressure, sometimes temperature; responsibilities also include light housecleaning, light cooking, meal –
>
> ALJ: [W]hat are the skills for light housekeeping or light cooking?
>
> VE: The fact that she can do it. Do you see what I'm saying? So, if you know how to do light housekeeping, that's a skill.

---

[11] The DOT describes this position (# 309.677-010 Companion) as follows:

Cares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs [PERSONAL ATTENDANT (domestic ser.)]. Transacts social or business affairs [SOCIAL SECRETARY (clerical)]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer.

7

> ALJ: Is that a skill?
>
> VE: It's part of a job.
>
> ALJ: I understand it's part of the job, but is it a skill?
>
> VE: Okay, if we're not considering that a skill, then –
>
> ALJ: Well, no, I'm asking you. Is somebody picking up or dusting furniture a skill?
>
> VE: I think – okay, so, I don't think it comes down to specifically that sweeping is a skill, or that doing dishes is a skill, its more of a household management, overall.

R. 59–60. The vocational expert attempted to further explain, noting that a Companion "manages what kinds of things need to be done on a single day, which includes the housekeeping; which includes what kinds of groceries you're going to need, what kind of time management they need, what kind of schedules they can keep." R. 60. The vocational expert summarized, "when I'm talking about, like, grocery shopping, and light housework, and light meal preparation, I'm including that in the overarching skill of household management." R. 60. Confusingly, the vocational expert both conceded that "housekeeping is an unskilled job" while maintaining that "household management" is an "overarching skill." Id.

To determine whether skills are transferable to other jobs, SSR 82.41(2)(d) directs that "close attention must be paid to the actual complexities of the job in dealing with data, people, or objects, and to the judgments required to do the work." Here, both the ALJ and vocational expert assume various similarities between the tasks Rebecca performed in her past work as a CNA and the work of a Companion. However, this assumption appears improperly based on the DOT description of a CNA, and not on work Rebecca actually performed. See Pyles v. Bowen, 849 F.2d 846, 848–89 (4th Cir. 1988) (reversing and awarding benefits when there was no evidence of the specific skills acquired that were transferable and stating "the Secretary must show that

8

specific skills actually acquired in the former are transferable to the latter"). Here, the ALJ does not adequately explain his analysis of transferable skills, or detail any of the specific skills Rebecca acquired as a CNA that would be transferable.

This omission is especially troublesome in light of SSR 82.41(d), which specifically indicates that the housekeeping tasks ordinarily performed by a nurse's aide "do not provide a special advantage over unskilled workers." These housekeeping tasks were the precise tasks that the vocational expert found to be transferable skills in this case. SSR 82.41(d) indicates these purported "transferable skills" actually provide no vocational advantage, as follows:

> A nurse aide ordinarily performs other tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing and undressing patients. The only duties which suggest transferable skills are those related to "nurse" rather than "aide"—taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. However, these occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not ordinarily give a meaningful vocational advantage over unskilled. The extent of such duties, however, may vary with individual nurse aides.

Id. The sparse discussion of the work Rebecca actually did as a CNA at the hearing provides no support for any extraordinary circumstances, such that she would have gained transferable skills not ordinarily obtained in that position.[12] See Barr v. Berryhill, No. 2:16-CV-42, 2017 WL 2803176, at *13 (N.D.W. Va. June 13, 2017), report and recommendation adopted, No. 2:16-CV-42, 2017 WL 2803168 (N.D.W. Va. June 28, 2017) (citing to SSR 82.41(2)(d) as indicating

---

[12] The Commissioner references Rebecca's Work History Report. However, this Report was not discussed by the ALJ, and it likewise indicates no other transferable skills. In her Work History Report, Rebecca lists her activities as a CNA as:

> Bathing, feeding, assisting clients in and out of a wheelchair, cutting finger nails, drying them and changing diapers, cleaning wheelchairs and walkers, trash, laundry, document clients on a regular basis, change sheets.

R. 236.

that "absent extraordinary circumstances, a [nurse aid] would *not* provide a meaningful vocational advantage over unskilled work and thus are not 'transferable skills'"). The Commissioner attempts to distinguish SSR 82.41 by emphasizing that Rebecca worked as a "*certified* nurse's aide." D.'s Br. at 10, Dkt. 15 (emphasis in original). However, this argument ignores that any specific skills acquired and performed by Rebecca in her past work were never discussed. See e.g. DI 25015.017 Transferability of Skills Assessment (TSA), SSA POMS DI 25015.017 (while nurse's aide skills "generally do not transfer to other work" many employers now require certification which generally includes additional education and training but "the specific skills *actually acquired and performed* by the individual as a nurse's aide must be identified, supported by appropriate documentation, and specific skills that are transferable identified") (emphasis added).

At bottom, the vocational expert never identified the skills Rebecca actually performed in her past relevant work as a CNA that were transferrable, and the housekeeping skills she did identify are not skills. The vocational expert attempts to sidestep that housekeeping is not a skill by presenting "household management" as a skill, when it appears to be primarily comprised of a variety of non-skilled activities. As indicated, the term "household management" is not in the DOT, nor have I found it in caselaw. This discrepancy is confusing and was not adequately explained by the ALJ. See Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion"). Accordingly, substantial evidence does not support the ALJ's finding that the positions of CNA and Companion have transferable skills and remand is appropriate.

Because I find that remand is warranted based on the ALJ's failure to identify Rebecca's transferable skills from her previous relevant work and explain a conflict with the DOT,

10

Rebecca's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Rebecca's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Rebecca's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 17, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge